NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CHARLES C. QUADE,        :

                                  :       Civil Action No. 07-3390 (SRC)

               Plaintiff,    :

                                    :           **OPINION**

           v.                    :

                                    :

MICHAEL J. ASTRUE,         :

COMMISSIONER OF SOCIAL     :

SECURITY,                     :

                                    :

              Defendant.   :

                                    :

---

**CHESLER**, District Judge

       This matter comes before the Court on the appeal by Plaintiff Charles C. Quade ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he is not eligible for Social Security Disability Benefits under the Social Security Act ("the Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

## I. BACKGROUND

       Plaintiff, who at the time of the decision presently under review was 45 years old, filed an application for Disability Insurance Benefits ("DIB") on December 4, 2003 (Tr. 57-59) claiming disability beginning on March 12, 2003 (Tr. 57). In his Disability Report, Plaintiff claimed that

he suffers from "[s]leep disorder, daytime sleep latency, headaches etc[.], anxiety, [and] depression" that limits his ability to work, because he "kept dozing off at work and while driving/irr[i]table/memory lapses/no energy/making mistakes more often." (Tr. 67.) He stopped working on March 12, 2003, explaining that ceasing work was necessary because "even though [I] was sleeping as much as [I] could[,] [I] could not do my job properly . . . [I] have a conscience and need to do things well." (Tr. 67, 68.) Plaintiff explained that he "was signed out by [Dr. Arthur Santiago]" based on the doctor's statement that "[Plaintiff] was unable to use, [] was not tolerating the C-pap machine, which supposedly cured [Plaintiff], and that it would be beneficial if [he] did not work while [he] was seeking alternate options." (Tr. 282 (Pl.'s hearing testimony).)

Plaintiff's most recent job, which he held from 1999 to 2003, was in inside sales and customer service at a lumberyard and home center. (Tr. 68.) In that job, Plaintiff stated in his Disability Report that he walked, stood, sat, climbed, stooped, kneeled, crouched, crawled, handled or grasped large objects, reached, and wrote, typed, and handled small objects for a total of eight hours a day. (Tr. 68-69.) He also wrote that he lifted objects weighing 100 pounds for one-third to two-thirds of the workday. (Tr. 69.) However, during the hearing before the Administrative Law Judge, Plaintiff explained that he was not required to lift and carry "but [he] sort of had to rather than watch [his] female coworker carry everything around" and he elaborated that "it was tacitly understood that [he] would help to the best of [his] ability." (Tr. 280.) Plaintiff testified that he lifted up to 120 pounds at times under these circumstances. (Tr. 280.) Prior to his most recent job, in the fifteen years before applying for DIB, Plaintiff worked as a sales representative at a building supply corporation, a customer service manager at a lumber

company, and a department manager at a home center.  (Tr. 90.)  Plaintiff completed two years of college but has no trade, vocational, or other special job training.  (Tr. 72.)

Plaintiff's DIB application was denied initially (Tr. 333-35) and on reconsideration (Tr. 40-42).  Plaintiff then requested a hearing.  (Tr. 43.)  A hearing was held before Administrative Law Judge ("ALJ") Richard L. DeSteno on February 3, 2006 during which Plaintiff appeared without counsel, and he and his father, Robert Quade, testified.   (Tr. 275, 301.)  ALJ DeSteno issued a decision on March 31, 2006 finding that Plaintiff was not disabled.  (Tr. 23, 30.) Plaintiff requested a review of the decision by the Appeals Council on May 22, 2006, and after obtaining extensions for the filing of new evidence, provided the Council with the additional evidence of an August 1, 2006 report from Dr. Marc Benton of Morristown Memorial Hospital's Sleep Disorder Clinic.  (Tr. 9-19.)  The request was denied on March 23, 2007.  (Tr. 7-11.) Plaintiff filed a second request for review of the ALJ's decision based on newly available evidence, but Plaintiff never produced that evidence.  (Tr. 5.)  The Appeals Counsel denied Plaintiff's second request to reopen the case on June 14, 2007, but granted Plaintiff an additional 45 days to file a civil action.  (Tr. 5-6.)  Plaintiff filed the Complaint presently under review on July 20, 2007.

## II.  DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) and must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. § 405(g); Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S.
197, 229 (1938)).  Substantial evidence "is more than a mere scintilla, but need not rise to the
level of a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).
The reviewing court must consider the totality of the evidence and then determine whether there
is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d
412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.
1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993).  If the ALJ's findings of
fact are supported by substantial evidence, this Court is bound by those findings, "even if [it]
would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d
Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's
decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses
and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)
subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;
(4) the claimant's educational background, work history and present age."  Blalock v.
Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that
supports a contrary conclusion does not undermine the Commissioner's decision so long as the
record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 F.
App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

4

**B.**     **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB benefits, a claimant must demonstrate that he or she "is under a

disability[.]"  42 U.S.C. § 423.  A claimant is deemed "disabled" under the Act if he or she is

unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is

predicated on whether a claimant's impairment is so severe that he or she "is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not

enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists,

a claimant must present evidence that his or her affliction "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically accepted

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one

through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the

claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. §§ 404.1520(a)(4)(i), (b).

If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the

disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  An impairment is severe if it

"significantly limits [a claimant's] physical or mental ability to do basic work activities."  20

C.F.R. 404.1520(c).  In determining whether the claimant has a severe impairment, the age,

education, and work experience of the claimant will not be considered.  Id.  If the claimant is

found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's

impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  If a

claimant's impairment meets or equals one of the listed impairments, he will be found disabled

under the Social Security Act.  If the claimant does not suffer from a listed impairment or its

equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

Third Circuit found that, to deny a claim at step three, the ALJ must specify which listings[2] apply

and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501

(3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Subpart 404, Part P, Appendix 1.

particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id. at 505.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e).  If the claimant is able to perform his past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. § 404.1520(a)(4)(iv).  In Burnett, the Third Circuit set forth the analysis required at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his or her past work, and his or her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1520(a)(4)(v), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the

7

claimant will not be found disabled.  20 C.F.R. § 404.1520(a)(4)(v).  Additionally, pursuant to 42

U.S.C. § 423(d)(2)(B), in the fifth step, the Commissioner "must analyze the cumulative effect of

the claimant's impairments in determining whether she is capable of performing work and is not

disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Subpart 404, Part P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  The guidelines also reflect the administrative

notice taken of the numbers of jobs in the national economy that exist for different combinations

of these factors.  20 C.F.R. Subpart 404, Part P, App. 2, Paragraph 200.00(b).  When a claimant's

vocational factors, as determined in the preceding steps of the evaluation, coincide with a

combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual

is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant

may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, App. 2,

Paragraph 200.00(a).

Additionally, throughout the disability determination process, the Commissioner must

"consider the combined effect of all of the individual's impairments without regard to wehther

any such impairment, if considered separately, would be of" sufficient severity to qualify the

claimant for benefits.  42 U.S.C. § 423(d)(2)(B).  However, the burden still remains on the

Plaintiff to prove that the impairments in combination are severe enough to qualify him or her for

benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility

on the claimant to show how a combination-effects analysis would have resulted in a qualifying

disability).

Finally, while <u>Burnett</u> involved a decision in which the ALJ's explanation of his step

three determination was so inadequate as to be beyond meaningful judicial review, the Third

Circuit applies its procedural requirements, as well as its interpretation in  <u>Jones v. Barnhart</u>, to

every step of the decision.  <u>See, e.g.</u>, <u>Rivera v. Commissioner</u>, 164 F. App'x 260, 262 (3d Cir.

2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to

allow for meaningful judicial review," but need not "adhere to a particular format."  <u>Id.</u>

### D.      The ALJ's Decision & Subsequent Amendment of the Record

In brief, the issues before the ALJ were whether Plaintiff was disabled within the

meaning of sections 216(i) and 223(d) of the  Social Security Act since March 12, 2003 and

whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Act.  (Tr.

23.)  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged

in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had "severe

impairments involving sleep apnea and degenerative disc disease of the lumbar spine"; 3) at step

three, Plaintiff "does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"; and

4) at step four, Plaintiff retained the RFC to perform his past relevant work as a store salesman.

(Tr. 25-30.)  Underlying his step four conclusion, the ALJ determined that Plaintiff "had, at all

material times, the [RFC] to perform work involving lifting and carrying objects weighing up to

20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking,

and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; not

involving exposure to heights or dangerous machinery."  (Tr. 26.)  Due to the ALJ's

determination at step four, no step five analysis was required.  In conclusion, the ALJ determined

9

that Plaintiff was not under a disability as defined in the Social Security Act from March 12,
2003 through March 31, 2006, the date of the ALJ's decision, and was therefore ineligible for a
period of disability and disability insurance benefits for that term.  (Tr. 23, 30.)  The ALJ also
found that Plaintiff met the insured status requirements of the Act through December 2008.  (Tr.
25.)

In coming to these determinations, the ALJ relied on the subjective evidence along with
medical evidence and consultive reports.  The ALJ reviewed Plaintiff's complaints of pain and
other ailments as described in Plaintiff's hearing testimony and in Plaintiff's father's hearing
testimony.  (Tr. 26-27.)  After comparing the testimony to the medical evidence and consultive
reports (discussed below), he determined that Plaintiff's "medically determinable impairments
could reasonably be expected to produce some of the alleged symptoms, but that [Plaintiff's]
statements concerning the intensity, duration and limiting effects of these symptoms are not
entirely credible."  (Tr. 27 (emphasis omitted).)

The following medical evidence of Plaintiff's treatment was reviewed by the ALJ:
treatment records and medical reports from September 19, 2001 to August 22, 2003 from the
Center for Sleep Medicine at St. Claire's Hospital, treatment records dating from May 13, 2003
to September 10, 2003 from Arshad Javed, M.D., medical reports dating April 16, 2003 to
December 15, 2003 from Michael A. Russoniello, M.D., a medical report relating to treatment
from April 29, 1997 to February 18, 2004 from Plaintiff's treating physician Dr. Arthur Santiago,
medical reports for the period of January 30, 2004 to June 24, 2004 from otolaryngologist Yosef
Krespi, M.D., a February 4, 2004 medical report from Joel Speilman, M.D. of the Orthopedic
Associates of West Essex, and medical records covering the period from March 2004 to February
2006 from Emily Sun, M.D.  (Tr. 27-28.)  The ALJ then reviewed Department of Disability

10

Services ("DDS") consultive reports and assessments, specifically the report of an  April 1, 2004

mental status consultive examination for DDS by Mark Friedman, Ph.D., the report of an April

14, 2004 orthopedic consultive examination for DDS by Salvatore Milazzo, M.D., an April 14,

2004, psychiatric review technique form and mental RFC assessment by DDS physician Ira

Weitzman, Ph.D., and a May 3, 2004 physical RFC assessment by DDS physician Howard

Goldbas, M.D.  (Tr. 28-29.)

        The ALJ did not adopt the findings in all of the medical and consultive opinions that he

reviewed.  In particular, he rejected a portion of the psychological findings and the chiropractor's

report.  Although he agreed with the majority of the RFC findings, the ALJ determined that "no

significant weight is accorded to the state agency's assessment of multiple moderate limitations

in various areas of mental functioning [(citing to Dr. Weitzman's assessment)]."  (Tr. 29.)  He

also gave "no significant weight" to Dr. Friedman's assessment that Plaintiff had a GAF of 50[3]

and chiropractor Dr. Jay Brecker's August 20, 2004 restrictive functional assessment.  (Tr. 29.)

        After the ALJ's decision, Plaintiff supplemented the record before the Appeals Council

with an August 1, 2006 letter from Marc L. Benton, M.D., F.C.C.P. of the Sleep Disorder Center

at Morristown Memorial Hospital to Dr. Emily Sun, Plaintiff's treating physician, which stated

that Plaintiff "underwent a split night nocturnal polysomnogram."  (Tr. 273.)  However, this

letter is not part of the record before the Court.  Only under certain circumstances can a district

---

        [3] "GAF measures the psychological, social, and occupational functioning levels of an
individual.  Torres v. Barnhart, 139 Fed. App'x 411, 415 n.2 (3d Cir. 2005) (citing American
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994)).  "A
GAF score falling between 41 and 50 indicates 'serious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job).'" Id. at n.4 (quoting Boyd v. Apfel,
239 F.3d 698, 702 (5th Cir. 2001)).

court consider additions to the record made before the Appeals Council in its review:

> It might seem . . . that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole.  And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts.  It is wrong when the Council has refused to review the case.  For then the decision reviewed in the courts is the decision of the administrative law judge.  The correctness of that decision depends on the evidence that was before him.  He cannot be faulted for having failed to weigh evidence never presented to him. . . .

Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001) (quoting Eads v. Sec'y of Health and Human Servs., 983 F.2d 815, 817 (7th Cir. 1993)).  In this case, since the Appeals Council refused to reopen and review the case, Dr. Benton's letter is not part of the record before this Court.  (Tr. 5; see Matthews, 239 F.3d at 593.)

### E.    **Plaintiff's Appeal**

Plaintiff contends that the ALJ's decision should be reversed because the Commissioner's determination, through the ALJ's decision and the Appeals Council's affirmance, is against the weight of the evidence due to the severity of Plaintiff's sleep apnea "when considered along with his back pain."  (Pl.'s Br. 6-8.)  More specifically, Plaintiff asserts that the ALJ did not give "proper weight . . . to the controlling medical opinions" (Pl.'s Reply Br. 1-9); the ALJ improperly found that Plaintiff's testimony as to his subjective complaints of pain was not entirely credible (Pl.'s Reply Br. 9-11); and the combined objective medical findings and subjective complaints of pain are sufficient to support a finding of disability (Pl.'s Reply Br. 12.).  In the alternative, if the Court does not find that he is disabled, Plaintiff argues that the ALJ's decision should be reversed and remanded for a new hearing based on newly available evidence.  (Pl.'s Br. 8-10.)

Plaintiff's first argument, that the ALJ did not give sufficient weight to the medical

opinions, is without merit, as Plaintiff fails to show that the ALJ's determination was not supported by substantial evidence.  At step three of the analysis, the ALJ found that Plaintiff's sleep apnea did "not involve any respiratory system that meets the criteria of any impairment listed in 3.10[,]" his spinal impairments did not meet the requirements of listing 1.04, and insufficient evidence was shown to establish a mental impairment.  (Tr. 25-26.)  The ALJ then reviewed the medical evidence in detail during his step four analysis.  (See Tr. 27-30.)

　　　In reviewing medical records,  "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).  However, the ALJ may reject a treating physician's opinion on the basis of contradictory evidence.  Id.  The ALJ may also choose the medical opinion of one doctor over that of another, but, when such a choice is made, the ALJ must "consider all the evidence and give some reason for discounting the evidence [he or] she rejects."  Id.; see also Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

　　　In this case, in evaluating Plaintiff's RFC, the ALJ summarized the medical reports provided by Plaintiff, and Plaintiff does not challenge the accuracy of the ALJ's summary.  (Tr. 27-29.)  In that summary, the ALJ noted Plaintiff's history of and treatment for sleep apnea and back problems.  (Tr. 28.)  First, addressing Plaintiff's sleep apnea, the ALJ's summary shows that all of the medical reports cited Plaintiff as suffering from that ailment.  (See Tr. 27-29.)  For example, the ALJ noted that, after undergoing a nocturnal polysomnogram with dental appliance and multiple sleep latency test in August 2003, Plaintiff was noted to have "excessive daytime sleepiness due to partially treated sleep-disordered breathing with dental appliance.  (Tr. 28; Tr. 225-26 (Dr. Javed's Sept. 2, 2003 report).)  Plaintiff's excessive daytime sleepiness was echoed

13

in Dr. Krespi's June 24, 2004 report, which found that Plainitff "should not operate heavy equipment and/or machinery that requires concentration due to excessive daytime sleepiness[.]" (Tr. 28; Tr. 208 (Dr. Krespi's report).)  Regarding Plaintiff's back problems, the ALJ noted Plaintiff's "past history of status post L5-S1 laminotomy" and his June 2003 onset of lower back pain.  (Tr. 28.)  For example, the ALJ described Dr. Speilman's February 4, 2004 diagnosis of a "[l]umbar strain pattern with severe DDD L5-S1" and the accompanying recommendation that Plaintiff take "Vioxx 25 mg  daily[ and] consider formal course of physical therapy if symptoms fail to improve."  (Tr. 28; Tr. 159 (Dr. Spielman's report).)  The ALJ also highlighted an orthopedic examination by Dr. Milazzo that was conducted at the request of DDS, which found that Plaintiff had

> an abnormal lumbosacral x-ray with degenerative joint disease and narrowing at the L5-S1, . . . dorosolumbar muscular tightness and tenderness, asymmetrical sacroiliac joint left, back pain with straight leg raising left, pain with squatting, needs assistance, has a decreased left Achilles reflex on the left, slight decrease in left calf musculature by 0.5 cm but no sensory abnormalities and has good strength throughout the lower extremities.

(Tr. 185-86 (Dr. Milazzo's Apr. 22, 2004 report); Tr. 28.)  In short, the ALJ did not discount any of the medical evidence from treating physicians; at no point did he disagree as to the existence Plaintiff's ailments.  The severity of those ailments is what was in question, and the medical evidence from treating physicians offers no specific contradiction of the ALJ's finding.

After focusing on the reports of treating physicians, the ALJ addressed the RFC Assessments by the DDS physicians and found them to support a finding of "not disabled."  (Tr. 28.)  The ALJ adopted the physical RFC Assessment by Dr. Goldbas from May 3, 2004 in full. (Tr. 29.)  That Assessment found Plaintiff to have the following exertional imitations: Plaintiff could occasionally lift and/or carry items weighing 20 pounds, frequently lift and/or carry items

14

weighing 10 pounds, stand and/or walk for up to four hours in an eight-hour workday, sit with normal breaks for approximately six hours over the course of an eight-hour workday, and push and/or pull objects without limitation.  (Tr. 191 (Dr. Goldbas' RFC Assessment); see Tr. 26 (ALJ's RFC determination).)  Dr. Goldbas also found Plaintiff to have the following postural limitations: he could frequently balance; occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; and never crawl or climb ladders, ropes, or scaffolds.  (Tr. 192.)  The RFC Assessment also cautioned that Plaintiff should "avoid heights and not drive if sleepy" due to his drowsiness from sleep apnea and his left leg weakness.  (Tr. 194.)  No visual, communicative, or manipulative limitations were found.  (Tr. 193-94.)  Dr. Goldbas found that the "severity of [Plaintiff's] symptoms is proportionate[,]" specifically his daytime sleepiness, and agreed with Dr. Santiago's March 13, 2003 determination that Plaintiff should not work for a month and Dr. Jarved's cautioning Plaintiff not to drive when tired and to reduce his driving to local trips.  (Tr. 195-96.)  At no point did Dr. Goldbas' RFC Assessment indicate that Plaintiff was unable to work.  (See Tr. 190-197.)

The ALJ then addressed the mental RFC Assessment and Psychiatric Review Technique Form by Dr. Weitzman, dated April 1, 2004 and the findings of Dr. Friedman's consultive psychological examination.  (Tr. 29; Tr. 166-79 (Psychiatric Review Technique Form); Tr. 180-83 (RFC Assessment); Tr. 162-65 (Dr. Friedman's report).)  However, the ALJ did not adopt these findings in full.  He found that "no significant weight is accorded to the state agency's assessment of multiple moderate limitations in various areas of mental functioning."  (Tr. 29.) No explanation was given for this rejection.  (Tr. 29.)  However, after giving "[n]o significant weight . . . to consultive psychologist Marc Friedman's assessment of an excessively low GAF of 50[,]" reasoning that the GAF finding "is not supported by his own objective findings or the

15

record as a whole" (Tr. 29), the ALJ reasoned that Plaintiff "has never sought or received treatment from a mental health professional and the record as a whole fails to establish any mental impairment that has had greater than a slight or minimal side effect on ability to perform basic work activities." (Tr. 29.)

In his psychiatric review, Dr. Weitzman found Plaintiff to suffer from a "[d]isturbance of mood, accompanied by a full or partial manic or depressive syndrome as evidenced by . . . [a]nhedonia or pervasive loss of interest in almost all activities, or . . . [d]ecreased energy" (Tr. 169), anxiety, and panic disorder of an unknown frequency (Tr. 171). Dr. Weitzman also found that Plaintiff had mild to moderate restriction of activities of daily living; mild to moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 176.) However, Dr. Weitzman concluded that Plaintiff is "[a]ble to adapt to routine work." (Tr. 178.) In the mental RFC Assessment, Dr. Weitzman found that Plaintiff was not significantly limited or that there was no evidence of limitation in most categories but found moderate limitation in Plaintiff's "ability to maintain attention and concentration for extended periods[,]" "work in coordination with or proximity to others without being distracted by them[,]" "complete a normal workday and workweek without limitations from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods[,]" "interact appropriately with the general public[,]" and "accept instructions and respond appropriately to criticism from supervisors." (Tr. 180-81.)

Dr. Friedman's conclusions following an examination on March 31, 2004 found Plaintiff to show the following diagnostic signs:

Axis I.        Panic disorder without agoraphobia.

16

|            |                         |
|------------|-------------------------|
|            | Depressive disorder NOS.|
| Axis II.   | None.                   |
| Axis III.  | Sleep apnea.            |
|            | Complaints of back pain.|
| Axis IV.   | None.                   |
| Axis V.    | GAF 50.                 |

(Tr. 165.)  Dr. Friedman then stated that Plaintiff "is competent to manage funds in his own

behalf.  He could benefit from outpatient psychotherapy.  With treatment compliance prognosis

is good.  His condition can be expected to last at least one year."  (Tr. 165.)

Finally, the ALJ gave "no significant weight" to the chiropractor's restrictive functional

assessment, explaining that "[i]t is not supported by his own objective findings or the record as a

whole, and a chiropractor is not an accepted medical source under the Regulations (20 C.F.R.

404.1513(a)(e))."  (Tr. 29.)

After reviewing Plaintiff's objections, the ALJ's decision, and the medical records, this

Court finds that the ALJ's treatment of and conclusions from the medical records are supported

by substantial evidence.  First, due to his acknowledgment that Plaintiff suffered from sleep

apnea and back problems, the ALJ accepted the substantive medical findings of the treating

physicians.  See Plummer, 186 F.3d at 429.  Second, after deviating from the psychological

findings of Doctors Weitzman and Friedman, the ALJ explained his rejection of the Doctors'

opinions, namely a lack of support within the record.  See id.  Since Plaintiff holds the burden of

proof at steps one through four of the analysis, Bowen, 482 U.S. at 146 n.5, the absence from the

record of treatment records from a mental health professional or complaints of mental

impairments having a great impact on Plaintiff's work ability provide substantial evidence to

support the ALJ's determination to discount the evidence.  See Plummer, 186 F.3d at 429; see

also Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.  Third, Plaintiff highlights the ALJ's

rejection of Dr. Friedman's finding that Plaintiff had a GAF of 50 as giving improper weight to the objective medical evidence (Pl.'s Reply Br. 6) but fails to show how the record supports Dr. Friedman's conclusion.  Further, the Third Circuit has held that a GAF score of 50 is not dispositive as to an individual's inability to work, as it "indicates [that an individual] could perform some substantial gainful activity[.]"  Hillman v. Barnhart, 48 Fed. App'x 26, 29 n.1 (3d Cir. 2002).  Finally, the ALJ's treatment of the chiropractor's report was not in error as "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight[,]" Hartranft, 181 F.3d at 361, although it may be considered despite such consideration not being required by statute, 20 C.F.R. § 416.913(d)(1) ("In addition to evidence from the acceptable medical sources . . . , we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . ." id. (emphasis added)); Hartranft, 181 F.3d at 361-62; but see Rios v. Barnhart, 57 F. App'x 99, 101 n.2 (3d Cir. 2003) (noting that the ALJ did not err in according little weight to a chiropractor's opinion).  In this case, as with the other evidence to which the ALJ gave "no significant weight," the ALJ explained his rejection of the chiropractor's conclusion, reasoning that the conclusion was "not supported by [the chiropractor's] own objective findings or the record as a whole."  (Tr. 29; see Plummer, 186 F.3d at 429.)  In sum, the ALJ's treatment of the medical evidence was supported by substantial evidence in the record.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

As to his second argument, the ALJ's determination that Plaintiff's subjective complaints of pain were not credible is supported by substantial evidence.  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [Plaintiff's] statements concerning the intensity duration and limiting effects of these symptoms are not entirely credible."  (Tr. 27 (emphasis omitted).)

18

Although subjective complaints of pain alone are not sufficient to establish disability, 42

U.S.C. § 423(d)(5)(A),

> [t]he ALJ must give serious consideration to the plaintiff's subjective complaints
> of pain, even when those assertions are not fully confirmed by objective medical
> evidence.  Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  The ALJ, though,
> is not obliged to accept without question the credibility of such subjective
> evidence.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  The ALJ has
> discretion "to evaluate the credibility of a claimant and to arrive at an independent
> judgment in light of medical findings and other evidence regarding the true extent
> of the pain alleged by the claimant." Brown v. Schweiker, 562 F. Supp. 284, 287
> (E.D. Pa. 1983) (quoting Bolton v. Secretary of HHS, 504 F. Supp. 288 (E.D.N.Y.
> 1980)).

LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988).  In evaluating the credibility of subjective

evidence, an ALJ considers the claimant's

> daily activities, [t]he location, duration, frequency, and intensity of [the
> claimant's] pain or other symptoms; [p]recipitating and aggravating factors; [t]he
> type, dosage, effectiveness, and side effects of any medication [the claimant]
> take[s] or [has] taken to alleviate [his or her] pain or other symptoms; [t]reatment,
> other than medication, [the claimant] receive[s] or [has] received for relief of [his
> or her] pain or other symptoms; [a]ny measures [the claimant] use[s] or [has] used
> to relieve [his or her] pain or other symptoms . . . ; and [o]ther factors concerning
> [the claimant's] functional limitations and restrictions due to pain or other
> symptoms.

20 C.F.R. § 404.1529(c)(3) (numbering omitted).

In coming to his conclusion, the ALJ found Plaintiff's complaints "reasonable to a

degree" but not supported by the record "to the debilitating extent asserted."  Specifically, the

ALJ explained that Plaintiff

> testified regarding daily activities, stating that he lives alone and has for his adult
> life.  He lives in a house.  He does not do many household chores.  He gets meals
> from his parents.  He cooks some easy things.  He drives very little.  He is home
> most of the time.  He used to read and watch TV together, but now he just does
> one or the other.  He falls asleep during the day.  He has a couple of friends left,
> but he just talks to them on the phone.  They get together once every two or three
> months.  The condition of the house is "a pig sty."  He drives to his friend[s']
> houses.  He can read for a couple of hours.

19

(Tr. 27.)  The ALJ's analysis therefore considers Plaintiff's daily activities and his complaints of pain.  When that evidence is compared to the medical reports, the combination presents substantial evidence in support of the ALJ's "independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  LaCorte, 678 F. Supp. at 83; 20 C.F.R. § 404.1529(c)(3).  As such, the ALJ's analysis of the subjective evidence is supported by substantial evidence in the record.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

Plaintiff's third argument is that, on the whole, the combined medical findings and subjective complaints are sufficient to support a finding of disability; however, the ALJ's finding to the contrary is supported by substantial evidence.  In the discussion above, this Court found that the ALJ's findings of fact regarding the medical evidence not demonstrating that Plaintiff is unable to work and the ALJ's rejection of Plaintiff's description of his pain were supported by substantial evidence.  As the ALJ found neither medical evidence nor subjective complaints sufficient to support a finding of disability, when viewed in tandem, the evidence falls equally short.  Further, the ALJ's decision demonstrates that he "consider[ed] all evidence before him." See Burnett, 22 F.3d at 121.  In contrast to Burnett, where the Third Circuit listed a series of objective medical evidence that was ignored by the ALJ, Plaintiff fails to show that the ALJ ignored contradictory evidence, and in its review of the record, the Court was unable to find any evidence that was overlooked.  See id. at 122-23.  Here, the ALJ addressed all contradictory evidence and explained why it was rejected.  (Tr. 27, 29.)  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision," Sassone, 165 F. App'x at 955,

20

and the record in this case provides such support for the ALJ's rejection of evidence of mental impairments, Plaintiff's subjective complaints of pain, and the chiropractor's report.  As this Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder[,]"  Williams, 970 F.2d at 1182, and the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings.  See Fargnoli, 247 F.3d at 38.

Plaintiff's final argument is that this case should be remanded for a new hearing based on newly available evidence.  Specifically, Plaintiff seeks a remand to allow the ALJ to consider medical reports dating from August 1, 2006 to June 20, 2007 by Dr. Benton and a vocational evaluation report from November 8, 2007 by Edmond Provder.  (Pl.'s Br. 9; Certif. of Joseph J. Bell, Esq. ("Bell Certif."), Exs. 1, 2 (Jan. 18, 2008.).)  However, the evidence presented by Plaintiff does not warrant a remand.

A remand to the Commissioner for consideration of new evidence is only appropriate where "the evidence is new and material and if there was good cause why it was not previously presented to the ALJ[.]"  Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001); 42 U.S.C. § 405(g).  Of particular importance, the materiality requirement requires "that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).

Plaintiff seeks a remand for review of material that could not have been added to the record at the time of the ALJ's review, because it post-dates the ALJ's March 31, 2006 determination.  (Bell Certif. Exs. 1, 2 (Dr. Benton's reports are from the period between August 1, 2006 and June 20, 2007, id. at Ex. 1, and Mr. Provder's report is dated November 8, 2007, id. at Ex. 2).)  Plaintiff's new evidence therefore does not "relate to the time period for which

21

benefits were denied[,]" <u>Szubak</u>, 745 F.2d at 833; instead, it relates to a time period that was not under consideration by the ALJ, namely April 1, 2006 to the present.  Furthermore, although the vocational evaluation report by Edmond Provder considered evidence from the period under review, it also considered Dr. Benton's reports, all of which post-date the ALJ's decision.  (Bell Certif., Ex. 2 at 4.)  As such, Mr. Provder's analysis is based in part on information that is not under consideration here, so it fails to meet the materiality requirement.  <u>See</u> <u>Szubak</u>, 745 F.2d at 833.  In short, Plaintiff's new evidence is not material, so his request for a remand for consideration of that evidence is denied.

This Court reviewed the ALJ's decision and the record it is based on.  In summary, the ALJ examined the medical evidence of Plaintiff's complaints dating back to September 19, 2001 and concluded that Plaintiff retained the residual functional capacity to perform his past relevant work as a store salesman from the period between March 12, 2003 to March 31, 2006.  Although Plaintiff has pointed to evidence of the pain from which he claims to suffer that may contradict this conclusion and has cited what he believes to be analytical flaws in the ALJ's decision, he has not demonstrated that the ALJ's determination was unsupported by substantial evidence.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: August 11, 2008


                                    __s/ Stanley R. Chesler_____
                                    STANLEY R. CHESLER, U.S.D.J.